## ED RAMSEY v. STATE.

No. A-6144.   Opinion Filed Nov. 27. 1926.
(250 Pac. 936.)

McCollum & McCollum, for plaintiff in error.

Geo. F. Short, Atty. Gen., for the State.

EDWARDS, J.   The plaintiff in error, hereinafter called defendant, in the district court of Pawnee county, was jointly charged with one Floyd Ratliff with in-

cendiarism as defined in section 2236, Comp. Stat. 1921, as amended by chapter 5, Session Laws 1925. The information in substance alleges that defendant and Ratliff set fire to and burned certain baled hay, the property of one Postlewaite. It is shown by the record that the codefendant, Floyd Ratliff, was 14 years of age, and a grandson of defendant. The state did not put Ratliff on trial, but tried defendant separately. The reason does not appear, but probably on the theory that under the provisions of the juvenile law the court did not have jurisdiction to proceed to trial with Ratliff. The jury returned its verdict finding defendant guilty, but failed to assess the punishment, which was by the court assessed at one year in the county jail.

The errors complained of may be summarized as: First. Error in admitting statements of the codefendant, Floyd Ratliff, used as a witness for the state, made out of the presence of defendant. Second. The insufficiency of the evidence.

It is the theory of the state that the setting of the fire was done by Floyd Ratliff on request and under the direction of defendant, who was not present. In support of this, the evidence is that defendant had a dispute with Postlewaite, the owner of the hay, over the right to cut it, and at the time declared that Postlewaite should not have the hay. While it was being put up Ratliff rode a horse of defendant's from his place, set fire to the hay, and immediately returned. The horse rode wore a peculiar racing shoe, and the track it made was identified going from Ramsey's place to a spot near where the hay was and returning. Ratliff was arrested before defendant was, and made statements out of the presence of defendant practically admitting that he burned the hay at the direction of defendant. Later he came under the tutelage of de-

fendant and repudiated and denied these statements. This was known to the county attorney before he was called as a witness, but the county attorney and court in the presence of the jury examined Ratliff at some length on the statements. A part follows:

"Q. Did you go to Harry Postlewaite's place where the hay was? A. No, sir.

"Q. Did you burn his hay? A. No, sir.

"Q. You told me that you did, didn't you, and you told the sheriff that?

"Mr. McCollum: Objected to as incompetent, irrelevant, and immaterial, and not binding on this defendant. even if he did tell him that.

"The Court: Overruled.

"Mr. McCollum: Exception.

"By Mr. Johnson: Q. You told me that you burned it? A. Yes, sir.

"Q. You told the sheriff you burned it. A. Yes, sir.

"Q. Told us the horse you rode—did you tell us about the horse you rode? A. Yes, sir.

"The Court: Ask him about whether he rode a horse over there.

"By Mr. Johnson: Q. How did you get over there? A. On horseback.

"Q. On horseback? A. Yes, sir.

"Q. Did you tell the sheriff which horse you rode? A. No, sir.

"Q. Did you tell me which horse you rode? A. No, sir.

"Q. Where did you go after you went over there on horseback? A. I came back home.

"Q. By whose place? A. By Charley Robideaux's.

"Q. Who, if any one, told you to burn that hay? A. Nobody.

"Q. Who did you tell me told you to do it? A. Nobody.

"Mr. McCollum: Objected to as incompetent, irrelevant and immaterial.

"The Court: Did you have a conversation with the county attorney down here regarding this matter?

"The Witness: Yes, sir.

"The Court: Did you tell him somebody told you to burn that hay?

"The Witness: Yes, sir.

"The Court: How came you to tell him that?

"The Witness: Because I was scared. I never had been arrested before.

"By Mr. Johnson: Q. Who told you to give that answer? A. Nobody.

"Q. In that conversation I had with you, did I make any threats? A. You told me you would prove it.

"Q. I will ask you if you said this: 'What will they do with me if I tell the truth?' Did you ask me that question?

"Mr. McCollum: That is objected to for the reason that it is incompetent as against this defendant.

"The Court: How came you to change your testimony?

"The Witness: How came me to change it?

"The Court: Yes; change it. If you told the county attorney that, was it the truth then?

"The Witness: No, sir.

"The Court: Why did you lie to him?

"The Witness: Because I was scared.

"The Court: You lied to him, then?

"The Witness: I never lied. I never burned the hay.

"The Court: Did you tell the county attorney you burned it?

"The Witness: Yes, sir.

"The Court: Did you tell him somebody told you to burn it?

"The Witness: No, sir.

"The Court: Did not tell the county attorney that?

"The Witness: No, sir.

"The Court: You may ask him anything about the circumstances relating to going there on horseback, etc."

"By Mr. Johnson: Q. Now, that evening, Floyd, after you set fire to the hay, if you did, you went back home? A. Yes, sir.

"Q. And your sister Imo was there? A. Yes, sir.

"Q. And your grandmother was there? A. Yes, sir.

"Q. Was Ed Ramsey there? A. Yes, sir.

"Q. Did you hear Ed Ramsey say anything about it looked like it might be a fire some place? A. No, sir.

"Q. Did he pat you on the back and say, 'Floyd won't tell anything on his old grandad'? A. No, sir.

"Q. Then, your grandfather did not know you were burning the hay? A. I did not burn the hay, and he never told me to."

At the conclusion of the evidence of this witness the counsel for the defendant moved that it be stricken, which was at the time by the court overruled. But at the conclusion of the state's evidence the court in-

structed the jury that the conversation between the witness Ratliff and the county attorney in the county attorney's office in the absence of the defendant was incompetent, and they should not consider it. It no doubt appeared to the court below, as it does to this court, that the witness Ratliff had disclosed to the sheriff and county attorney when arrested the true circumstances of the burning of the hay. If he had been on trial this evidence would have been competent as to him, but the conspiracy between him and defendant, if it existed, terminated with the incendiarism, and statements thereafter made by Ratliff in the absence of defendant were not binding on defendant. They were not competent, and their admission was error which could not be cured by an instruction to the jury to not consider it.

We perceive fully the difficulty under which the state is placed in not being able to present the testimony of this witness, but the rules of evidence cannot be broken down to meet the exigencies of any particular case. The case was extremely close, the circumstantial evidence of doubtful sufficiency, and without this incompetent evidence the verdict might have been different.

The case is reversed and remanded.

BESSEY, P. J., and DOYLE, J., concur.