## LUTHER BURROWS v. STATE.

No. A-8857. June 21, 1935.
(46 Pac. [2d] 575.)

Williams, Cowan & Benedum, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J. The plaintiff in error, for convenience hereinafter referred to as the defendant, was convicted of the crime of transporting intoxicating liquor, and sentenced to pay a fine of $100 and to be confined in the county jail for 60 days.

C. A. Arter, who was riding in the car with the defendant, testified on behalf of the state: I went with the defendant to McClain county, about three or four miles from the Canadian river, where the defendant bought a gallon and a quart of whisky; we were returning home, and while crossing the bridge saw the officers of Cleveland county; when the officers started to follow the car in which we were riding the witness says, "We speeded up the car and just before the officers caught up with us I broke the jars and let the whisky run out through the bottom of the car." Arter says the defendant asked him to go with him, and the defendant says Arter hired him to drive him over there, and that the whisky belonged to Arter and not to him; that he had no interest in the whisky whatever. There is a direct conflict in the testimony of C. A. Arter and the defendant.

The state, in rebuttal, called witnesses to show that the reputation of the defendant in the community in which he lived for truth and veracity was bad. When the state closed its testimony, the defendant called H. D. Adams as a witness, and when the witness was asked his name, the court asked, "What are you going to prove by the witness?" Defendant's counsel advised the court they wanted to rebut the testimony as to the truth and veracity of the defendant. By the Court: "You can't do that. I will let you prove his general good reputation." The defendant asked permission and stated he offered to prove by certain witnesses,

naming them, that the reputation of the defendant in the community in which he lived for truth and veracity was good. The offer of the defendant was denied, overruled, and exceptions saved.

The defendant has assigned several errors. In the view we take of this record it is only necessary to consider assignment No. 2, which goes to the ruling of the court refusing to let the defendant offer surrebuttal evidence as to his truth and veracity in the community in which he lived; the state having directly assailed the veracity of the defendant.

In Davis v. State, 38 Md. 15, 18, the Supreme Court of that state said:

"That as the purpose of the state was to discredit the witness H. by disproving material facts testified to by him, it was competent for the prisoner to sustain the witness by proof of his general character for veracity; and as the credit of the witnesses H. and S. was fairly put in issue, it was equally competent for the state under such circumstances to support the general character of its witness S. for veracity."

In Smith v. State, 20 Okla. Cr. 362, 202 Pac. 1046, this court, in the second paragraph of the syllabus, said:

"Where the veracity of the defendant who is a witness in his own behalf is called in question, his general reputation for truth may be sustained by character witnesses who know that reputation, and the refusal of the court to permit such reputation to be shown is error."

Judge Elliott, in his Works on Evidence, vol. 2, § 995, in part says:

"When the reputation of a witness for truth has been impeached, the party calling a witness has a right to call other witnesses to prove that his reputation is good."

It has been held by a majority of the courts that in order to render the testimony of good character competent and admissible in support of the witness, an attack must necessarily have been made on his character for truth and veracity.

In this case the state did not rely upon the question of the conflict in the testimony of the state and defendant, but directly assailed the truth and veracity of the defendant, and the court erred when it refused to permit the defendant to show by his witnesses that his reputation for truth and veracity in the community in which he lived was good.

For the reasons stated, the case is reversed.

DOYLE, J., concurs. EDWARDS, J., not participating.